**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUAN PANTOJA SERRANO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:26-cv-1372 |
| WARDEN MOSHANNON VALLEY PROCESSING CENTER, *et al.*, | ) | Judge Marilyn J. Horan |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**ORDER**

Presently before the Court is Petitioner Juan Pantoja Serrano's ("Petitioner") Motion to Enforce (ECF No. 8) and accompanying brief (ECF No. 9), Respondents' Response (ECF No. 11), and Petitioner's Reply (ECF No. 12). Upon review of the parties' initial and subsequent filings, the Court will **GRANT** Petitioner's Motion to Enforce and order his immediate release.

## I. Factual Background

On July 14, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. ECF No. 1. On August 6, 2026, the Court granted this petition in part, ordering Respondents to provide Petitioner with an individualized bond hearing before a neutral immigration judge within 30 days, or "else release Petitioner by such date." ECF No. 6. The Court also noted that "[t]his timeline may be extended by Petitioner upon a motion to the immigration judge" and that "Respondents shall ensure that the hearing include the required due process, including, at a minimum, factfinding based upon a record produced before a decisionmaker and disclosed to Petitioner; an opportunity to make arguments on Petitioner's behalf; and the right to an individualized determination of Petitioner's interests." *Id.*

On August 20, 2026, an immigration judge conducted a bond hearing and denied bond because Petitioner had "failed to establish that he is not a flight risk, nor that any amount of bond would mitigate his flight risk." *See* ECF No. 8-2, p. 188. In making this determination, the immigration judge made the following analysis in her written order, dated August 24, 2026:

> The Court considered the following in making this determination, including but not limited to: Respondent entered the United States unlawfully in 2006 and did nothing to remedy his unlawful status until he was detained in 2026. Respondent filed a 42B, which was adjudicated. Following the merits hearing, Respondent's application was denied and he was ordered removed. He does not have a likelihood of success on appeal. Respondent only recently married his United States citizen wife in 2023. Respondent has never paid taxes. The immigration judge found that Respondent failed to pay any taxes while his wife received $1400 per month in SNAP benefits and Medicaid. Respondent has no viable pathway to lawful status. If released, the Respondent would be able to resume residing in the same community, maintain his employment, and continue his daily life while his proceedings remain pending. The continuation of those circumstances may result in even stronger personal and community ties over time. As those ties deepen, the incentive to avoid compliance with a final order of removal correspondingly increases. Accordingly, the Court finds that the Respondent's community ties, while significant, do not sufficiently mitigate the risk that he would fail to appear for future proceedings or comply with a final order of removal.

*Id.*

On September 9, 2026, Petitioner filed a Motion to Enforce the Court's August 6, 2026 Order, alleging that the hearing was fundamentally unfair because the "immigration judge failed to act as a neutral and impartial arbiter[.]" ECF No. 8, p. 3; ECF No. 12, p. 3. Namely, Petitioner claims that the immigration judge refused to grant a continuance based on the emergency dental surgery of Petitioner's retained counsel, demanded that the substitute counsel "disconnect from the electronic video hearing," "yelled at [and] attacked" the substitute counsel, "discussed uncorroborated evidence[,]" "made unsupported allegations of wrong doing on the part of

Petitioner[,]" "laughed at the length of Petitioner's current marriage[,]" and acted as an advocate for the government. ECF No. 8, p. 2-3; ECF No. 9, p. 11.

In turn, Respondents claim that "Petitioner's arguments regarding the outcome of the bond hearing are brought properly to the BIA" and that "Petitioner has not shown that his bond hearing was fundamentally unfair, in violation of due process requirements." ECF No. 11, p. 2. Although the Respondents acknowledge that Petitioner's retained counsel was unable to attend due to a medical appointment, they allege that Petitioner has not demonstrated "any prejudice suffered as a result of [the retained counsel's] absence" and that the immigration judge "discussed and detailed her reasoning for nearly seven minutes" after "more than ten minutes of argument" by the parties. *Id.* at 3-4.

In his Reply, Petitioner contends that exhaustion is not required because the Court retains the ability to enforce its own order. *See* ECF No. 12, p. 3.

## II. Exhaustion

The Court will not require Petitioner to exhaust his administrative remedies. Exhaustion is not required if "administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *See Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). In particular, "[a]s it relates to an appeal of the denial of bond, futility is apparent because 'it is not at all clear that the BIA could evaluate the legality of the [immigration judge]'s bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'" *Mujica-Marquez v. Hoover*, No. 4:26-CV-00623, 2026 WL 1483740, at *3 (M.D. Pa. May 27, 2026) (quoting *Shonhai v. Lowe*,

No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026)); *see also A.D. v. Oddo*, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026) (questioning whether such a requirement would even exist where a petitioner was seeking to enforce a previously-issued writ). As such, "to the extent that any exhaustion issue exists" in this matter, the Court will deem it excused. *See A.D.*, 2026 WL 1251470, at *3.

**III. Review of the Court-Ordered Bond Hearing**

Federal courts "lack jurisdiction to review any discretionary determinations underlying the [immigration judge's] bond decision," but may "review whether the bond hearing was fundamentally unfair" such that it violates the detainee's due process rights. *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022); *see also Mujica-Marquez*, 2026 WL 1483740, at *2 (concluding that "beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a court has the inherent power to enforce its own orders" (internal quotations removed)).

The United States Court of Appeals for the Third Circuit has advised that a bond hearing under 8 U.S.C. § 1226 is "fundamentally fair," and thus satisfies due process, if three essential elements are present: (1) factfinding based on a record produced before the decisionmaker and disclosed to the detainee; (2) the detainee is allowed to make arguments on his or her behalf; and (3) the immigration judge makes an individualized determination of the detainee's interests. *Ghanem*, 2022 WL 574624 at *2.

When making this individualized determination, the "[m]echanistic reliance on factors that are common to all § 1226(a) detainees will not suffice" to satisfy due process. *See Mujica-Marquez*, 2026 WL 1483740, at *4 (citing *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728,

at *3 (M.D. Pa. Aug. 6, 2020)). "For a bond hearing to adequately provide an individualized determination, any evidence relied upon by an immigration judge must be individualized and support a finding that continued detention is needed to prevent the detainee from fleeing or harming the community." *Id.* Yet an immigration judge "need not discuss each and every piece of evidence…when rendering a decision, as long as that decision is substantially supported[.]" *See Akbarov v. AG United States*, 629 F. App'x 309, 312 (3d Cir. 2015) (quoting *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005)).

After conducting a review of the parties' filings and the audio file of the bond hearing provided by Petitioner, the Court is utterly appalled at the immigration judge's conduct and treatment of the parties during the August 20, 2026 hearing. As discussed below, this Court concludes that Petitioner did not receive a constitutionally sufficient fundamentally fair bond hearing.

### a. Evaluation of the Second *Ghanem* Factor[1]

"With respect to the second element of fundamental fairness identified by the *Ghanem* court, the Third Circuit has previously recognized that aliens in removal proceedings 'have a statutory right to counsel, and a constitutional right to counsel based on the Fifth Amendment's guarantee of due process of law.'" *Joseph v. Warden Pike Cnty. Corr. Facility*, No. 3:25-CV-02428, 2026 WL 2445548, at *5 (M.D. Pa. Aug. 20, 2026) (quoting *Borges v. Gonzales*, 402 F.3d 398, 408 (3d Cir. 2005)). "[T]he right to counsel is so fundamental to the proceeding's fairness that a denial of that right could rise to the level of fundamental unfairness. Therefore, although the

[1] As all three factors must be present to ensure due process, the Court finds it unnecessary to analyze the first *Ghanem* factor and thus will proceed directly to the second and third factors. *See Ghanem*, 2022 WL 574624 at *2.

Fifth Amendment does not mandate government-appointed counsel for aliens at removal proceedings, it indisputably affords an alien the right to counsel of his or her own choice at his or her own expense." *Leslie v. Att'y Gen. U.S.*, 611 F.3d 171, 181 (3d Cir. 2010) (internal citations omitted).

In the August 20, 2026 hearing, the immigration judge refused to allow a continuance based on the medical emergency of Petitioner's retained counsel, despite several days remaining in the ordered bond window and explicit language in this Court's order (*see* ECF No. 6 ("This timeline may be extended by Petitioner upon a motion to the immigration judge.")): [2]

> MS. BOLIVAR: Good morning, Your Honor (inaudible) on behalf of the -- (audio cutting in and out).
> THE COURT: Counsel, I cannot hear. I can't hear you. You're cutting in and out.
> MS. BOLIVAR: Can you hear me?
> THE COURT: Yes, now I can hear you.
> MS. BOLIVAR: Sorry, Your Honor. Jennifer Bolivar on behalf of Attorney Lahoud who requested a continuance because he has to be in surgery. The motion to continue has an exhibit which includes the letter (audio difficulties) we're requesting a brief (audio difficulties).
> THE COURT: I guess I don't -- I mean, you're an attorney, correct?
> MS. BOLIVAR: I am an attorney, Your Honor. But I'm not well acquainted with the facts of the case. I haven't had an opportunity to talk to respondent, or I don't -- I haven't been able to identify what additional evidence is necessary, because I haven't been able to speak to respondent. Attorneys Lahoud on the other –
> THE COURT: I mean, counsel -- hold on, stop. You filed -- somebody filed evidence, 131 pages, that includes a lot of evidence, and then, and that was today. And then additional evidence was -- is this an additional -- yeah, it's the same, so a total of 131 pages plus. So I don't -- I don't see a reason to continue it, counsel. So you're the attorney sitting here. We're going to continue. Go ahead and argue -- nope, stop. Don't talk over me, counsel. Do not talk over me. Don't talk over me. You're –
> MS. BOLIVAR: You're not allowing me to speak –
> THE COURT: I am. But you don't talk over me. That's how this works. I tell you when you can talk. You're going to summarize the request for bond. Go ahead.

[2] The Court was only provided with an audio file of the bond hearing, so this unofficial transcription was completed by the Court for purposes of this order.

> MS. BOLIVAR: Before I do that, I do want to note that I wouldn't be able to identify what additional evidence is needed. The evidence packet that was submitted was Attorney Lahoud, but for some reason you denied bond based on a lack of evidence or because there's information that wasn't in there or because I don't know certain information. This goes back to the reason why the motion to continue –
> THE COURT: That's fine, counsel. I understand. You can take it up with the board. Here's the thing. The notice for the bond habeas went out on August 7th. The attorney has had ample opportunity to file evidence. Whether you personally haven't filed evidence is irrelevant. The case has been prepared, you work with the attorney, you're familiar with the case, go ahead and sum –
> MS. BOLIVAR: I don't –
> THE COURT: Counsel, summarize the request for bond.
> MS. BOLIVAR: I -- I want to reiterate, I am not –
> THE COURT: Counsel, I'm going to tell you one more time. You can take it up with the board one more time. Summarize the request for bond.

ECF No. 8, Exhibit K.

Based upon the record before this Court, there appears to be no reason why the immigration judge could not continue Petitioner's bond hearing to allow Petitioner's retained counsel to attend. First, the immigration judge certainly had the power to grant the extension, as provided in this Court's order. *See* ECF No. 6; *see also Diaz Gomez v. Oddo*, No. 3:26-CV-01542-MJH, 2026 WL 3012414, at *2 (W.D. Pa. Oct. 7, 2026) ("Indeed, the clause permitting Petitioner to seek an extension would be meaningless if the immigration judge could not act to extend the time.").

Second, the Fifth Amendment guarantees "an alien the right to counsel of his or her own choice[,]" (*see Leslie*, 611 F.3d at 181), but Attorney Bolivar, the substitute counsel who attended the August 20, 2026 hearing, was not chosen by Petitioner. *See* ECF No. 9, p. 2. Rather, Attorney Bolivar, "an associate of Counsel for Petitioner, who was unfamiliar with the case and had not previously met with or spoken to Petitioner, signed onto Petitioner's remote hearing to advise the immigration judge of the Motion to Continue and Counsel for Petitioner's brief adjournment

request." *Id.* Various courts in this circuit have held that refusing to allow a continuance where a detainee's counsel is unable to attend with ample time remaining in the ordered period is a violation of due process. *See Joseph v. Warden Pike Cty. Corr. Facility*, No. 3:25-CV-02428, 2026 WL 2445548, at *6 (M.D. Pa. Aug. 20, 2026) (holding that a detainee's due process rights were violated where the detainee asked for a continuance to enable his counsel to attend, but the immigration judge denied the request and conducted the hearing only 7 days into the 21-day period provided by the habeas order); *Freza v. Att'y Gen. U.S.*, 49 F.4th 293, 299-302 (3d Cir. 2022) (concluding that the immigration judge violated the detainee's due process and statutory right to counsel in denying his motion to continue, where it was his first request for continuance and counsel had been newly hired); *c.f. Diaz v. Oddo*, No. CV 26-1158, 2026 WL 3135155, at *2 (W.D. Pa. Oct. 20, 2026) (holding that a detainee's due process rights were not violated where the detainee did not ask for a continuance and the hearing was "1 day shy of the expiration of the 10-day period"). Here, although Attorney Bolivar told the immigration judge that she was not well-acquainted with the case and could not be an effective advocate for Petitioner, the immigration judge denied the continuance and insisted that she continue. ECF No. 8, Exhibit K.

As such, "[r]efusing to continue the bond hearing under the circumstances presented to permit [Petitioner] to be represented by his retained counsel constituted a violation of his due process and statutory right to counsel." *See Joseph v. Warden Pike Cty. Corr. Facility*, No. 3:25-CV-02428, 2026 WL 2445548, at *6 (M.D. Pa. Aug. 20, 2026). Thus, the Court concludes that such refusal is a violation of the second *Ghanem* factor. *See Ghanem*, 2022 WL 574624 at *2.[3]

---

[3] The Court also notes that the immigration judge ordered Attorney Bolivar to proceed as Petitioner's counsel for the bond hearing, but then did not allow Attorney Bolivar to fully represent Petitioner. *See* ECF No. 12, p. 7-8. Namely,

**b. Evaluation of the Third *Ghanem* Factor**

Under the third *Ghanem* factor, "[d]ue process requires a neutral adjudicator to make [an] individualized assessment" of the detainee's interests. *See Vera-Velez v. Soto,* No. 26CV1480 (EP) (MAH), 2026 WL 963348, at *3 (D.N.J. Apr. 9, 2026) (citing *Ghanem*, 2022 WL 574624 at *2)). In general, the Third Circuit has "held that [immigration judges] have a duty to remain neutral and impartial when conducting immigration hearings and that an [immigration judge's] statements and behavior while conducting a hearing may rise to the level of a due process violation when the [immigration judge] abandons her role as a neutral factfinder and insults and belittles a petitioner." *Roldan v. Att'y Gen. of U.S.*, 381 F. App'x 195, 197 (3d Cir. 2010) (collecting cases).

Here, although the written order appears to reflect due process, the immigration judge's verbal statements present a different reality:

> THE COURT: Now the judge also found that he failed to pay his taxes any time in the United States while his qualifying relatives received $1,400 per month in SNAP benefits and Medicaid. And that because of that, he showed a deficiency of character and did not warrant a favorable exercise of the court's discretion. The nonpayment of taxes is significant. The violation of law is significant. The engaging in fraud related to government benefits is -- is significant. I'm not sure who applied for the actual benefits, but you're required to report all income in the household,

---

after the immigration judge gave her decision on the record, Attorney Bolivar was instructed to immediately disconnect from the courtroom:

> COURT: So I'm going to deny bond. Letters of appeal, counsel?
> MS. BOLIVAR: Yes. And I also do want to note that denial of the appeal is also speculative, when there is an ineffective assistance of counsel claim –
> THE COURT: Counsel, counsel, counsel, you do not need to repeat. I swear -- do not keep talking over me. I can cut you off. That's how this works. I can cut you off.
> MS. BOLIVAR: I'm –
> THE COURT: We are not equal, counsel. We are not equal. I run the show -- disconnect. Disconnect from my court now. Now.
> MS. BOLIVAR: I'll also request a transcript. Thank you.

ECF No. 8, Exhibit K. As the Court has already found that the refusal to allow a continuance violated *Ghanem*, it will not address whether this early forced departure of Attorney Bolivar violates *Ghanem* as well, but it will note that such behavior by the immigration judge is deeply troubling.

> and I often hear the excuse of, well, I'm not here legally, so I didn't think we could. That's just, you know, not persuasive to the court. You are required to do that. And you're getting a benefit that could go to other children that actually need it, that their households qualify for it. And they're not receiving it. I just read an article that there are -- there are hundreds, if not a thousand or more kids in the United States right now that have lost their benefits. Well, if people like respondent and his partner or wife didn't engage in this behavior, then that money could have gone to a kid that actually their household was eligible. So I am really concerned about that behavior. Just shows additional violation of law or disregard of the law and everybody else. Right? That's just showing, I don't care about others, I care about what my family gets and what I get. He just got married in 2023. That is not a very long period of time. I understand his wife is a United States citizen. But that's not a long time. He has three biological children. He now has three step children, but, again, he's had those step children for three years. And he did nothing to resolve his immigration status until after he got married. He filed that I-130 in 2025. So he came here in 2006. So almost 20 years later he decides to do something to resolve his immigration status. So clearly he didn't intend on resolving his immigration status up until that time. And he has been self-employed the entire time, and that is likely how he's been able to successfully avoid paying taxes in the United States.

ECF No. 8, Exhibit K.

Although an immigration judge can consider a detainee's past criminal activity when evaluating bond (*see In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)), another district court recently found that an immigration judge should not rely on a detainee's failure to file tax returns when evaluating flight risk. *See Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026). Further, the immigration judge's comments were problematic and based on generalized assertions and external sources, including a news article that was not available to either party. *See Wang v. Att'y Gen. of U.S.*, 423 F.3d 260, 269 (3d Cir. 2005) (holding that, even if the immigration judge was reacting spontaneously to the petitioner's argument, "her attitude still may be characterized as bias or prejudice if her comments are so antagonistic or so extreme as to display clear inability to render fair judgment"); *but see Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (finding that the "lack of courtesy and

the absence of the expected level of professionalism" exhibited by the immigration judge was insufficient to demonstrate a due process violation).

As such, viewing the immigration judge's remarks in combination with her refusal to provide a continuance to allow retained counsel to attend the bond hearing, the Court concludes that the August 20, 2026 bond hearing was not "fundamentally fair" and did not satisfy due process. *See Ghanem*, 2022 WL 574624 at *2.

**IV. Relief**

When a constitutionally inadequate bond hearing was conducted by an immigration judge, "release, rather than ordering another bond hearing, is an appropriate equitable remedy." *Paulino v. Oddo*, No. 3:26-CV-898, 2026 WL 2546652, at *4 (W.D. Pa. Aug. 11, 2026). "Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate bond hearing." *Haiguang Zheng v. Rokosky*, 826 F. Supp. 3d 545, 560 (D.N.J. 2026). Additionally, Respondents were forewarned that failure to comply with the Court's prior order would lead to Petitioner's immediate release. *See* ECF No. 6 ("Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within thirty (30) days of this order, or else release Petitioner by such date."); *see also A.D.*, 2026 WL 1251470, at *4 ("Finding unfair prejudice here, the undersigned is constrained to conclude that Respondents have failed to comply with the Order dated January 14, 2026, conditionally granting the Writ."); *Paulino*, 2026 WL 2546652, at *4 (same).

Thus, the Court will **GRANT** Petitioner's Motion to Enforce (ECF No. 8) and order Petitioner's immediate release from custody.

Accordingly, this 5th day of November 2026, it is hereby **ORDERED** as follows:

1. Respondents shall immediately release Petitioner from immigration detention and transport him to his Pennsylvania home residence within 72 hours of entry of this order.
2. Upon his release, Respondents shall provide Petitioner with any and all of his belongings seized[4] when he was taken into detention on April 13, 2026, and his belongings will accompany him to his Pennsylvania home residence.
3. Respondents are to provide the Court with a report, once Petitioner is safely returned to his residence.
4. Upon release, Respondents shall not require Petitioner to check-in with immigration authorities more frequently than once in any ninety (90) day period during the pendency of his removal proceedings.
5. Petitioner is not to be re-detained unless there is a subsequent change in Petitioner's circumstances where the government sufficiently alleges that such change affects the safety of the public or the Petitioner's likelihood of being a flight risk. "Respondent[s] will be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b), absent a compelling change in circumstances." *Cherenfant, v. Warden, Pike Cty. Corr. Facility*, No. 3:26-CV-2987, 2026 WL 3085459, at *5 (M.D. Pa. Oct. 15, 2026)[5] (citing *Bethancourt Soto*, 807 F. Supp. 3d at 410 (permanently enjoining respondents from detaining petitioner

[4] Petitioner's personal belongings shall include, to the extent such documents were seized, his immigration documents and any government issued identification, such as a state driver's license.

[5] The Court in *Cherenfant* determined that the habeas petition would be granted because "Petitioner's mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A) violates his procedural due process rights under the Fifth Amendment." *Cherenfant*, 2026 WL 3085459, at *5.

under § 1225)); *Patel v. O'Neill*, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (same). If Respondents elect to later detain Petitioner under 8 U.S.C. § 1226(a), Respondents must provide Petitioner with notice and an opportunity to be heard at a timely individualized fundamentally fair bond hearing where an Immigration Judge shall assess whether he is a danger or flight risk.

DATED: November 5, 2026

Marilyn J. Horan
United States District Court Judge